## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-8326-WM

UNITED STATES OF AMERICA

v.

**DARIUS COELLO,**

          **Defendant.**

_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?        ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   ___ Yes  ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5500228
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:      561-820-8711
Fax:     561-820-8777
Email:   john.mcmillan@usdoj.gov



AO 91 (Rev. 08/09)  Criminal Complaint

FILED BY_____ KJZ _____ D.C.

Sep 28, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## UNITED STATES DISTRICT CO

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| DARIUS COELLO | ) | 20-8326-WM |
| | ) | |
| | ) | |

Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    04/06/2017 - 09/21/2020    in the county of    Palm Beach    in the

Southern    District of    Florida    , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | Making false statements to a federal law enforcement officer; |
| 18 U.S.C. § 924(a)(1)(A) | Making a false or fictitious oral or written statement in the records required to be maintained by a Federal Firearms Licensee (FFL); |
| 18 U.S.C. § 922(g)(3) | Habitual User of a Controlled Substance in Possession of a Firearm; and, |
| 18 U.S.C. § 922(a)(1)(A) | Engaging in the business of dealing in firearms without a license. |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*TFO*

Complainant's signature

Kevin Drummond, Task Force Agent, ATF

Printed name and title

Sworn to before me and signed in XXXXXXXXXXX and attested to me by Applicant by Telephone (FaceTime) per Fed.R.Crim.P. 4(d) and 4.1.

Date:    Sept. 28, 2020

William Matthewman

Judge's signature

City and state:    West Palm Beach, FL

Hon. William Matthewman, U.S. Magistrate Judge

Printed name and title

## AFFIDAVIT

Your affiant, KEVIN DRUMMOND, first being duly sworn, does hereby depose and state as follows:

### Introduction

1.     Your affiant is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has served in that capacity since November 2017.   Your affiant is also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has approximately 17 years of law enforcement experience.  As a Task Force Officer with ATF, your affiant's duties and responsibilities include conducting criminal investigations of individuals that have violated federal laws, particularly laws contained in Titles 18 and 26, of the United States Code.

2.     During your affiant's tenure with ATF and the Palm Beach County Sheriff's Office (PBSO), your affiant has personally participated in excess of 40 investigations and prosecutions of persons for making "straw purchases" on behalf of prohibited persons and illegal firearms trafficking, and over 400 prior investigations of convicted felons in possession of firearms. As a consequence, your affiant has become extremely familiar with the ways, manner and means by which persons prohibited from purchasing firearms (primarily convicted felons) obtain, possess and maintain in their possession, use, firearms, and the means by which such prohibited persons acquire firearms through the use of people facially lawfully entitled to purchase or obtain firearms from federally licensed firearms dealers (FFLs), that is, through the use of "straw purchasers" and illegal gun dealers/traffickers.  Additionally during your affiant's tenure with ATF and PBSO, your affiant has participated in excess of over 600 investigations

related to the illegal sale, purchase, use, possession and distribution of illicit narcotics to include marijuana, cocaine, heroin, ecstasy and fentanyl.

3.    This Affidavit is in support of a complaint charging Darius COELLO with violations of: 1) Title 18, United States Code Section 1001(a)(2) making false statements to a federal law enforcement officer; 2) Title 18, United States Code, Section 924(a)(1)(A) making a false or fictitious oral or written statement in the records required to be maintained by a Federal Firearms Licensee (FFL); 3) Title 18, United States Code, Section 922(g)(3) User of a Controlled Substance in Possession of a Firearm; and Title 18, United States Code, Section 922(a)(1)(A) Engaging in the business of dealing in firearms without a license.

4.    Because this affidavit is being submitted for the limited purpose of obtaining a Criminal Complaint and arrest warrant, it does not purport to contain all the information known regarding this investigation, but rather those facts that I believe are necessary to establish the requisite probable cause as to the aforementioned criminal violations.

5.    On the basis of your affiant's training and experience, your affiant is aware that under federal law, an FFL is obliged to obtain a signed Firearms Transaction Record, commonly known as an ATF Form 4473 (Form 4473), whenever a firearm is sold or transferred to an individual who is not themselves a FFL. This form is designed to identify the serial number and type of firearm sold, the seller, the person purchasing the firearm, and whether or not the purchaser is eligible to possess or buy a firearm. Eligibility to purchase a firearm is determined by the person's answers to a series of questions, which in essence cover a list of disqualifying factors under federal law; including, whether the person is a convicted felon, has a history of drug abuse or mental incapacity and whether the person has legal status to be in the United States. Your affiant notes that on every Form 4473 completed since April 2012; (a) the applicant

2

is required to answer question 11.a, which states, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" followed by prominent warning in bold that, **"Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the licensee cannot transfer the firearm(s) to you**. ...Yes / No." I am aware, based on my training and experience, that a truthful answer to this question is very important to the lawful sale of the firearm, since only the purchaser is subject to a criminal background check, residency, and age determination. Moreover, the ATF Form 4473 is used as starting point for the tracing of firearms recovered at crime scenes, and false information provided as to the identity of the actual purchaser can obstruct, impede or defeat later tracing of a firearm by ATF.

6.    After the Form 4473 is completed and signed by the purchaser, attesting to the accuracy of his/her responses, a Florida FFL is then obliged under federal and state law to contact the Florida Department of Law Enforcement to conduct a background check and obtain approval of the sale. There is typically an associated minimum fee charged to both the FFL and thereafter to the customer for this service. In addition, the purchaser of a handgun or handguns who does not possess a valid concealed firearms license is subject to a waiting period, and must wait five (5) business days from the date of purchase to receive actual physical possession of the firearm in Palm Beach County, Florida, and some other jurisdictions in Florida. FFLs are also legally required to notify ATF through the filing of a "multiple purchase form" if any individual purchases two or more handguns from an FFL during any five-day period.

7.    Your affiant is further aware on the basis of his training and experience that a person who purchases a firearm at the behest of another person, and falsely states on the Form 4473 that he or she is the actual buyer of the firearm is known as a "straw purchaser."

3

### Facts in Support of Probable Cause

8.      In July of 2019, ATF began an investigation into Darius COELLO. According to ATF gun trace records, three firearms purchased by COELLO between July 2016 and April 2018, were recovered in criminal investigations and thereafter submitted to ATF for tracing. According to those ATF gun traces, Darius COELLO purchased (at least) the following firearms during that time period:

> a.  July 16, 2016 – Glock, Model 23, .40 caliber semi-automatic pistol, Serial No. BBTH905
>
> b.  **April 6, 2017**- Ruger, Model AR-556, 5.56 caliber semi-automatic rifle (and AR-15 variant rifle), Serial No. 852-72245
>
> c.  April 21, 2018 – Glock, Model 27, .40 caliber semi-automatic pistol, Serial No. BEVA985

9.      The earliest gun trace related to COELLO's activities, according to the ATF trace report, reflected the purchase of a Ruger, Model AR-556, 5.56 caliber, semi-automatic Rifle, Serial No. 852-72245, having been purchased by COELLO on April 6, 2017. COELLO purchased the Ruger, Model AR-556, from Shoot Straight, an FFL located in Palm Beach County, Florida. (FFL#15912298).  Only six (6) days after COELLO purchased the Ruger, Model AR-556, it was recovered by the West Palm Beach Police Department (WPBPD) at a shooting scene in West Palm Beach, Palm Beach County, Florida.

10.     On July 17, 2019, your affiant obtained an ATF Firearms Transaction Record (ATF Form 4473) from Shoot Straight. The 4473 form was completed and signed by Darius COELLO at Shoot Straight on April 6, 2017, in West Palm Beach, Palm Beach County, Southern District of Florida. The ATF 4473 form documented the sale of a Ruger, Model AR-

4

556, 5.56 mm caliber, semi-automatic Rifle, Serial No.852-72245. This firearm is the same firearm that was recovered six days after COELLO purchased it, by WPBPD during the aforementioned shooting incident.

11.    During the investigation SA Finnamore and your affiant located a Palm Beach County Sheriff's Office (PBSO) report related to the theft and possible straw purchase of a firearm by Darius COELLO, reference PBSO Case 17-061431. In said report, the victim of the theft (auto burglary), who shall be referred to as "MR" herein, reported a vehicle burglary where a firearm was stolen. MR told Detectives on **April 6, 2017** he and a friend, who he later identified as COELLO, traveled to Shoot Straight located at 7171 Southern Boulevard, West Palm Beach, Florida, Southern District of Florida, at which time MR attempted to purchase a Ruger AR-15 style rifle. During MR's attempt to purchase the firearm, employees advised him there would be a five day waiting period to obtain the firearm due to MR not possessing a Florida concealed weapons license. During this interaction with employees, COELLO advised MR that instead of MR purchasing the firearm and waiting the five days, COELLO would instead purchase the firearm for MR to evade the five day waiting period, due to COELLO possessing a Florida concealed weapons license. It should be noted a Florida resident possessing a Florida concealed weapons license would not be required to wait the five day waiting period to obtain the firearm.

12.    At this time, MR advised law enforcement he exited the store to meet with COELLO in the parking lot. MR told COELLO which firearm he wanted and provided COELLO six hundred dollars in US Currency to purchase the rifle. COELLO and MR both went back into the store and COELLO purchased the rifle MR had previously described to him as the rifle MR wanted. Your affiant obtained security video footage of the interior of Shoot

Straight during this time frame from Shoot Straight. In the video, your affiant could clearly see COELLO and MR walk in the store together.[1] Both of them walk around the interior of the store for a while and eventually come back together in front of the area where the rifles are hanging on the wall. When COELLO and MR are standing near the rifle section, you can clearly see MR pointing to the wall where the rifles are and COELLO is talking to MR while MR is pointing. Eventually COELLO purchases the rifle, MR and COELLO both exit the store after COELLO purchases the rifle. You can see COELLO is carrying the rifle box on his shoulder as both he and MR exit the store. MR advised when they exited the store COELLO placed the box containing the rifle into the trunk of MR's vehicle.

13.    In order for COELLO to purchase this firearm COELLO filled out an ATF form 4473 and checked "yes" on question 11(a), which asks if you are the actual purchaser of this firearm. If COELLO had checked no on question 11(a), he would have been denied the purchase by the store employees as per Federal Law. It should be noted that the price of the Ruger rifle was $538.93 while MR provided six hundred dollars in United States Currency to COELLO.

14.    The firearm COELLO purchased was a Ruger, Model AR-556 5.56 cal, Serial No. No. 852-72245. This firearm was in fact the firearm that MR reported as being stolen from the trunk of his vehicle on the very next morning (April 7, 2017) after it was purchased. When MR reported the rifle stolen, it should be noted he still had the firearm box in his trunk, but the rifle had been taken out of the box. The firearm was stolen out of MR's vehicle while he was out having drinks with two of COELLO's friends. MR advised law enforcement that after the firearms purchase, COELLO suggested getting a drink, to which MR agreed, and invited two

---

[1] Your affiant notes that in the course of this investigation, he has physically met and spoke with both MR and defendant COELLO, and is thus very familiar with both individuals' physical appearance.

friends, subsequently identified as YJ and DD. MR advised he did not really know these two individuals (YJ and DD) as he had just met them that night and they were introduced to him by COELLO just prior to going out to have drinks. Shortly after departing MR's residence, however, COELLO asked to be dropped off and did not accompany the group. This information was confirmed by video surveillance at one of the locations MR, YJ and DD visited during the time they were out drinking. In the video your affiant could observe MR, YJ and DD[2] on video together walking up to the establishment Double D's located at 8199 Southern Boulevard West Palm Beach, FL 33411.

15.    MR advised that eventually he, YJ and DD ended up at a bar somewhere around Westgate Avenue and Congress Avenue. While at this location, YJ and DD attempted to lead MR around the back of the building. MR advised at some point YJ and DD got into the vehicle and left him standing in the parking lot as they left the area. MR advised his phone was dead and he was unable to make a call. MR advised he eventually was able to contact his brother who came and picked him up at the bar. MR advised once he got back to his vehicle, he discovered his vehicle had been burglarized and the rifle had been stolen from the trunk of his vehicle.

16.    Investigation determined that during PBSO Detective Schilling's investigation of the auto-burglary and theft, he was contacted by Detective Robbins of the West Palm Beach Police Department (WPBPD). Detective Robbins advised Detective Schilling that on April 10, 2017, approximately 4 days after the above burglary and theft of the firearm incident occurred, the WPBPD recovered the Ruger AR-15 style rifle reported stolen by MR. It should be noted that the ATF etracing system advised the firearm to be recovered on the 12th of April, 2017. The firearm was recovered on the passenger seat of the vehicle DD had been driving 4 days earlier

---

[2] Your affiant was able to identify YJ and DD from comparison to their Florida Driver License photographs.

7

during the incident described above (based on vehicle identifying information subsequently related by MR set forth below). DD was found in the vehicle suffering from multiple gunshot wounds. This information was documented under WPBPD Case No. 2017-0006904. DD was also one of the individuals MR had been introduced to by COELLO on the night of April 6, 2017, following COELLO's purchase of the firearm for MR, which is also the same night this firearm being the Ruger AR-556 was stolen.[3]

17.     On Thursday April 13, 2017, Detective Schilling conducted a post-*Miranda* interview with DD at St. Mary's Medical Center, 901 45th Street West Palm Beach, Florida 33407. During the interview, DD confirmed he was in fact with MR, COELLO and YG the night of April 6, 2017. DD confirmed that he drove to the bar at the intersection of North Congress Avenue and Westgate Avenue. During the interview DD confirmed he did in fact leave MR in the parking lot of the bar as MR had previously stated. DD denied any knowledge of the Ruger AR-556 rifle located in his vehicle when he was found in the vehicle after the shooting incident in West Palm Beach.

18.     Also on April 13, 2017 Detective Schilling conducted two photo array lineups with MR. During this interview MR identified both YJ and DD as individuals he was with the night his rifle was stolen. MR further advised DD was the individual that was driving the red Kia they rode to the bar in.

19.     On July 30, 2019, SA Finnamore and your affiant conducted an interview with MR, who had since relocated to another state. The following is a brief synopsis of the interview

---

[3] To clarify, your affiant notes that the Ruger AR-15 variant rifle was purchased during the daytime hours on April 6, 2017. MR was unable to return to his vehicle until the early morning hours of April 7, 2017, and reported the auto burglary upon his return. Thus, the actual burglary of the vehicle may have occurred during the evening of April 6, or the early morning hours of April 7, 2017.

with MR. Your affiant asked MR about the theft of the firearm that was taken from his vehicle during the burglary in April 2017. MR advised he had gone to Shoot Straight with a friend Darius. Your affiant then showed MR a photo of COELLO as MR advised he was familiar with Darius and does know him. Your affiant showed MR a Florida Driver's License photo of Darius COELLO. MR confirmed the Darius he was speaking about was in fact the same as the individual in the photo he was shown. MR advised he and COELLO had spoken prior to going to Shoot Straight about purchasing an AR-15. MR advised COELLO told him he could buy the gun for MR as MR did not have a concealed weapons license and COELLO did, so he could buy the firearm and MR would not have to wait the five days. MR advised COELLO told MR he would buy the firearm if MR would pay him an extra 100 dollars to do so. MR was unsure if he and COELLO drove together or came in separate vehicles due to how long ago it happened. MR advised the firearm cost five hundred dollars. MR advised he gave COELLO six hundred dollars to purchase the firearm and MR was aware that COELLO would keep the extra money for purchasing the firearm. MR advised he walked in with COELLO and was standing near him several times during the time frame they were inside of Shoot Straight (This was confirmed through surveillance footage retrieved from Shoot Straight). MR advised when they went outside COELLO placed the box with the firearm in either the backseat or the trunk of MR's vehicle. Later, COELLO suggested to MR that they go drinking, and invited his friends YJ and DD to accompany them. MR advised all of them got into DD's vehicle and left to go have drinks. However, shortly after their departure, MR said they dropped off COELLO and MR was left with YJ and DD. MR was unsure of exactly where they had dropped COELLO, but believed it was near Royal Palm Beach. MR advised after they dropped off COELLO, MR, YJ and DD went to a strip club (This is confirmed through surveillance footage obtained from Double D's).

MR advised they were not at the strip club very long as YJ and DD were denied entry as they claimed they did not have their driver's licenses with them. MR said they then went to a bar near Westgate. While there, MR said YJ and DD tried to get him to go around the back of the bar, MR said while YJ and DD were trying to get him to go around back the owner of the bar came out and yelled at them. MR said YJ and DD then ran off and left him in the parking lot (This is confirmed from the post-*Miranda* statement provided by DD to Detective Schilling).   SA Finnamore asked MR if either YJ or DD had guns and MR advised yes they did because he saw them. MR said the guns were Glocks. MR said he had met one of these guys before but did not know his name. MR said after YJ and DD left him in the parking lot, he went back inside the bar to charge his phone as it was dead. MR said his brother picked him up at approximately 5:00 am and took him back to his car. MR said once he got back to his car, he noticed the window had been broken and the Ruger AR-556 rifle had been stolen out of his trunk. MR advised the only people that knew his car was there was him, COELLO, YJ and DD. Your affiant asked MR if COELLO had advised if he had ever purchased a firearm for another person before and MR advised yes he did, that he had done so for one of the guys that was with them, being either YJ or DD. MR said he had known COELLO for a few months. SA Finnamore asked MR who came up with the idea of the extra 100 dollars for the gun and MR said COELLO had made that decision. SA Finnamore then asked MR who decided on which firearm to purchase and MR advised that he (MR) did while he was in the store due to the firearm being on sale. MR then said he told COELLO while they were in the store which firearm he wanted (Your affiant confirmed such from the Shoot Straight security video which depicts MR pointing at firearms and talking to COELLO while standing next to COELLO). MR advised he and COELLO were the only two people that knew the rifle was in the trunk of MR's car.

20.     On September 23, 2020, your affiant and SA Finnamore made contact with Darius COELLO in the parking lot of the "El Presidente" located at 4645 Gun Club Road, West Palm Beach, Florida 33415. This contact was a non-custodial audio-recorded interview of COELLO and took place in a public parking lot. During the interview, COELLO was advised on multiple occasions he was not under arrest and free to leave at any time. The following is a brief synopsis of the interview with COELLO. SA Finnamore and your affiant introduced themselves to COELLO and immediately cautioned COELLO of Title 18 United States Code 1001's legal prohibition against knowingly providing false information to a Federal law enforcement officer. COELLO physically acknowledged by nodding his head and saying, "Okay." COELLO initially provided his current residential address as 5984 Lime Road West Palm Beach, Florida 33413. COELLO provided his cell phone number as (561)260-4703.

21.     COELLO stated to Agents that he has lived at numerous addresses over the past few years. Agents asked COELLO what these addresses were and the timeframe he stayed at these locations. COELLO provided the following addresses and relative timeframes COELLO lived at these addresses to Agents:

    a)     260 Crestwood Circle- 2015-2017

    b)     1485 Easthampton Circle- 2018-2020

    c)     5986 Lime Road- 2015-current

    d)     1112 Parkway Court- 2015-2016

    e)     1645 Renaissance Commons Boulevard- 2018-2019

25.     COELLO initially stated to Agents that he is currently unemployed due to injuring his back during a construction job. It should be noted that later in the interview

11

COELLO told Agents that he has been employed at a marijuana farm in Oregon, where he harvests marijuana.

22.     Agents began questioning COELLO in reference to his Ruger AR-556 rifle purchase on April 6, 2017. COELLO stated he remembered the firearm purchase. COELLO initially told Agents he had purchased the firearm for himself and then had sold it to someone else. COELLO initially advised he had the firearm for about two months and a couple weeks prior to selling the firearm. COELLO advised he paid approximately six hundred dollars for the firearm. COELLO advised initially he sold the firearm for about five hundred and eighty dollars. COELLO initially advised he did not like it and further stated that once he put the iron sight and optic on it and shot it, he did not like it. COELLO claimed he did not have any paperwork related to the sale of the firearm, as all of his paperwork had been lost when he moved. COELLO advised he sold the firearm to a young white guy that he only knew as, "N". COELLO initially advised he had lost money when he sold the firearm and said he sold it for a twenty-dollar loss. COELLO advised he purchased the firearm at Shoot Straight. COELLO further advised initially he was by himself when he purchased the firearm. COELLO advised he did not speak to the male he had sold the firearm to after he sold it to him. When questioned in reference to his previous statement about shooting the firearm when he changed his sights, COELLO recanted this statement and advised he did not shoot the firearm. COELLO further stated he only put the sights on the firearm and did not like the way it looked. COELLO advised he did not know what happened to the guy or the gun after he sold it.

23.     Eventually, Agents reiterated the importance of not lying to Federal Agents pursuant to 18 USC § 1001. COELLO confirmed that he remembered Agents warning him not to lie to Federal Agents. Agents asked COELLO to review his firearm paperwork with them and

clarify some concerns Agents had in reference to the paperwork. Your affiant then displayed the ATF form 4473 for the sale of the Ruger AR-556 rifle purchased by COELLO at Shoot Straight on April 6, 2017. Your affiant then read question 11a. of the ATF form 4473, which reads, "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm to you". Your affiant then asked COELLO if he read that question when filling out the form and COELLO advised he did. Your affiant then asked COELLO if he bought the firearm for himself and he advised "yes" he did. Your affiant then confronted COELLO in reference to not being truthful with Agents thus far during the interview, and your affiant knew that COELLO did not purchase the firearm for himself. At this time, COELLO advised Agents that he did try to help the guy (MR) out. COELLO reiterated that he definitely did try to help him (MR) out. COELLO was then shown the copy of the concealed weapons license and driver's license that was used to purchase the firearm. Which COELLO confirmed was his concealed weapons license and driver's license. Your affiant questioned COELLO in reference to MR giving COELLO six hundred dollars to purchase the firearm and COELLO advised MR did not. COELLO further stated that he utilized his own money to purchase the firearm and received payment from MR approximately one week later in exchange for the firearm. It should be noted your affiant knows this was a false statement given by COELLO, due to the fact that the firearm in question was recovered in a crime six days after the purchase of the firearm.

24.    SA Finnamore then asked COELLO how COELLO ended up at Shoot Straight and purchased the firearm. COELLO stated to Agents he was called by MR and MR stated to COELLO he wanted to buy the firearm. COELLO stated he told MR, "Alright, I'll help you

13

out." COELLO then told Agents he met MR at Shoot Straight. COELLO further advised upon arriving at Shoot Straight and meeting with MR, MR told COELLO, "Just buy it for me and I will grab it from you". COELLO advised he told MR, "Alright, cool". COELLO again stated MR met him at Shoot Straight. Your affiant asked COELLO why MR would have COELLO buy the firearm instead of MR buying the firearm himself. Your affiant asked COELLO if it was because COELLO had a concealed weapon license and did not have to wait the five day waiting period. COELLO confirmed that was the reason COELLO purchased the firearm for MR. Your affiant confirmed with COELLO that COELLO's possession of a concealed weapons license was, in fact, the reason he had purchased the firearm and not MR. COELLO responded, "Yeah, yeah, yeah, yeah, yeah 'cause he (MR) wanted it the same day". Your affiant asked COELLO if MR had given him extra money for buying the firearm. COELLO initially responded in the negative; that he (MR) had not. Your affiant then asked COELLO if MR had given COELLO the exact amount COELLO had paid for the gun and COELLO advised no MR had given COELLO a little more but it was not six hundred, and it was after the fact that COELLO had purchased the firearm. SA Finnamore asked COELLO when MR had given COELLO the money and COELLO advised it was a few days after. COELLO eventually advised it was about a week after the purchase of the firearm. Again your affiant knows this is a false statement by COELLO as this would not be possible based on the fact the firearm was already stolen from MR's vehicle the day after the purchase, and recovered less than a week after the purchase of the firearm. SA Finnamore reiterated to COELLO that COELLO had come clean in reference to buying the firearm for MR and COELLO once again stated, "Yeah man, I'm not gonna lie to you guys".

25. Your affiant then questioned COELLO in reference to COELLO purchasing firearms for other people similar to the situation with MR. COELLO stated. "Yeah, I, I've done it for somebody else." COELLO further stated at this time that he does not do it for just anybody; he makes sure they are not felons. COELLO further stated, the reason is because people come to him and tell him they need something to protect their family. Your affiant asked COELLO if when COELLO purchases firearms for people he does it with the anticipation of making a profit. COELLO responded by saying, "I don't, I don't really, and if I do it's minimal, twenty bucks, fifty, it's a tip". SA Finnamore asked COELLO how many people he has done this for and COELLO responded with two. Agents asked COELLO who else has he purchased firearms for and COELLO advised a family friend. When Agents asked whom that person was, COELLO advised he did not want to give that name.

26. Your affiant then questioned COELLO on his use of illicit narcotics, specifically if COELLO smoked marijuana and COELLO immediately responded, "I smoke weed". Your affiant knows based on his training and experience the term weed is common street terminology utilized to identify marijuana. Your affiant asked COELLO how often he uses marijuana and COELLO advised approximately once or twice a month. SA Finnamore wanted to clarify with COELLO that he does not sell drugs and COELLO responded by saying, "Hell no". SA Finnamore asked COELLO how long he has been smoking marijuana and COELLO responded for about three years.

27. Your affiant asked COELLO in all the years COELLO has had a concealed weapons license, how many firearms does he think he has purchased. COELLO advised approximately thirty firearms. Your affiant then asked COELLO how many of those firearms COELLO still has and he advised probably three pistols. Your affiant then asked if COELLO

15

had purchased any firearms recently. COELLO told agents that he had purchased firearms within the last week. Your affiant asked COELLO what type of firearm COELLO purchased and COELLO stated he purchased a "40", specifically a Smith and Wesson SD40VE. Your affiant subsequently asks COELLO where he purchased the firearm, to which COELLO responds "Guns and Ammo". Agents then asks COELLO if he is referring to Guns and Range, an FFL located within West Palm Beach, Florida. COELLO agreed that the FFL he purchased the firearm from was Guns and Range. Your affiant asked COELLO if he still had this firearm in his possession. COELLO advised your affiant that no he did not have the firearm anymore. It should be noted this firearm was purchased by COELLO based on his own admission about a week ago, and no longer has it. COELLO initially advised Agents that he "Let somebody hold it". Your affiant questioned COELLO as to whom he gave the firearm to; COELLO advised he gave the firearm to "a friend". Agents asked COELLO whom the friend was that he gave the firearm to. COELLO stated the friends name was "Isa", COELLO stated he did not know his last name but that he was a Black Male approximately 60 years of age and an ex-Air Force service member. COELLO further stated that he knew that "Isa" was not a convicted felon, but reiterated he did not know his last name. COELLO stated to Agents that "Isa" told him the firearm was for his family. Your affiant asked COELLO if he did the same thing referring to buying the gun for "Isa" because he needs it, to which COELLO replied yes. Your affiant clarified with COELLO that COELLO bought the firearm for "Isa" so that he would not have to wait the 5 day's for the background check and COELLO advised yes. Your affiant asked COELLO if "Isa" asked COELLO to buy the gun. COELLO responded to your affiant, "Yes he needed it for his family". SA Finnamore asked COELLO how much money he made for purchasing the firearm for "Isa". COELLO responded to SA Finnamore by stating he did not

make much money off the deal, "Maybe a hundred bucks". Your affiant asked COELLO, if he made a profit of about eighty to one hundred dollars and COELLO agreed saying "yes something like that." Your affiant asked COELLO if he bought any additional firearms within the past month. COELLO advised Agents that he also purchased an "AR". Your affiant asked COELLO what type of "AR" COELLO purchased and COELLO responded by saying "An AR-15, .223". It should be noted that COELLO could not recall the make and model of the AR style rifle he purchased a week earlier when asked by Agents. SA Finnamore asked COELLO whom that firearm was given to, and COELLO responded with "that went to him too" referring to "Isa". COELLO described the transaction as a "Package Deal". COELLO stated that he also made about one hundred dollars off this firearm as well.

28.      On September 24, 2020, SA Finnamore traveled to Guns and Range Inc., an FFL located at 1016 Clare Avenue Unit 1 West Palm Beach, FL 33401. SA Finnamore made contact with employees to request copies of the ATF form 4473's associated with the firearms Darius COELLO advised he had purchased for "Isa". Upon making contact with employees, it was discovered that COELLO has purchased eight firearms since December 2019 exclusively from Guns and Range Inc. Upon receiving copies of the ATF Form 4473's related to COELLO from employees, SA Finnamore discovered the following:

a)      COELLO purchased a Smith and Wesson model SD40VE .40 cal. Pistol on September 21, 2020. COELLO stated his residential address to be 1485 Easthampton Circle Wellington, Florida. On September 22, 2020 agents made contact with the residents of 1485 Easthampton Circle who stated they lived at that address for a couple months and that COELLO did not live there. Additionally, COELLO check the "no" box for question 11(e) asking if he was an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or

17

any other controlled substance.  COELLO also check the "yes" box for question 11(a) that he was the actual purchaser of the firearm listed on the form.

b)      COELLO purchased both a Glock model 43X 9 mm pistol and an F1 AR-15 style rifle on September 4, 2020.  COELLO stated his residential address to be 1485 Easthampton Circle Wellington, Florida.  COELLO again checked the "no" box for question 11(e) and the "yes" box for question 11(a).

c)      COELLO purchased a Glock model 45 Gen 5-9 mm pistol on July 5, 2020.

d)      COELLO purchased three firearms to include a Glock model 43X 9 mm pistol, a Kel-Tec model P-11 9 mm pistol and a Taurus model G3 9 mm pistol on February 7, 2020. COELLO stated his residential address to be 5986 Lime Road West Palm Beach, Florida 33413. COELLO again check the "no" box for question 11(e) and the "yes" box for 11(a).

e)      COELLO purchased a Taurus G2C 9 mm pistol on December 3, 2019.  COELLO stated his residential address to be 1112 Parkway Court Greenacres, Florida 33413.  COELLO once again checked the "no" box for question 11(e) and the "yes" box for question 11(a).

29.      The transactions referenced in paragraph 28 (a) and (b) above are the transactions COELLO stated he had conducted for another person during the interview of COELLO on September 23, 2020.  It should be noted that during that interview COELLO only told Agents about the Smith and Wesson pistol and the AR-15 rifle.  COELLO did not advise Agents that during the same transaction involving the AR-15 rifle, he also purchased an additional firearm. All of the above reference ATF Form 4473's were signed and dated by Darius COELLO.

30.      On the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge Darius COELLO with the following violations of federal law to wit: 1) Title 18, United States Code Section 1001(a)(2) making false statements to a federal law

18

enforcement officer; 2) Title 18, United States Code, Section 924(a)(1)(A) making a false or fictitious oral or written statement in the records required to be maintained by a Federal Firearms Licensee (FFL); 3) Title 18, United States Code, Section 922(g)(3) Habitual User of a Controlled Substance in Possession of a Firearm; Title 18, United States Code, Section 922(a)(1)(A) Engaging in the business of dealing in firearms without a license.

FURTHER YOUR AFFIANT SAITH NAUGHT.


KEVIN DRUMMOND
TASK FORCE OFFICER
BUREAU    OF    ALCOHOL,    TOBACCO,
FIREARMS, AND EXPLOSIVES


ATTESTED TO ME TELEPHONICALLY BY
THE APPLICANT IN ACCORDANCE WITH
THE REQUIREMENTS OF FED. R. CRIM. P.
4.1 THIS __28th__ DAY OF SEPTEMBER, 2020.

HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

19