UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-8326-WM

UNITED STATES OF AMERICA,

v.

DARIUS COELLO,

Defendant.
_____ /

FILED BY_____KJZ_____D.C.

Oct 9, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## PRETRIAL DETENTION ORDER

The Court, pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, hereby ORDERS the Defendant, DARIUS COELLO, detained pursuant to the provisions of Sections (b), (e), and (f).

The Government moved for pre-trial detention of Defendant on the basis that he is a serious risk of flight or nonappearance and a danger to the community. Defendant appeared before the Court on October 5, 2020, via Zoom video teleconference (VTC) from the U.S. Marshal's cellblock at the West Palm Beach federal courthouse for a combined detention and a preliminary probable cause hearing on a Criminal Complaint [DE 3]. The hearing was not completed on October 5, 2020, and, therefore, a continuation of the detention hearing and preliminary probable cause hearing was held on October 7, 2020, via Zoom VTC.

Defendant knowingly and voluntarily and with the advice of competent counsel waived his personal presence in the courtroom on both October 5 and 7, 2020, and agreed to appear by Zoom VTC from the U.S. Marshal's cellblock for both hearings. Because the Court also found that the hearings could not be delayed without serious harm to the interests of justice, the hearings were

conducted by Zoom VTC.

At the conclusion of the hearing on October 7, 2020, the Court orally ordered that Defendant be detained and found that no condition or combination of conditions of release could reasonably assure the appearance of Defendant or the safety of the community as required. The Court makes the following findings of fact with respect to this order for detention:

**Factors:**

a) **The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

Defendant is charged by Criminal Complaint. The Criminal Complaint alleges that Defendant (1) made false statements to a federal law enforcement officer, in violation of 18 U.S.C. § 1001; (2) made a false or fictitious oral or written statement in the records required to be maintained by a Federal Firearms Licensee, in violation of 18 U.S.C. § 924 (a)(1)(A); (3) is a habitual user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3); and (4) engaged in the business of dealing firearms without a license, in violation of 18 U.S.C. § 922 (a)(1)(A). If convicted of a violation of making a false statement to a federal law enforcement officer, making a false statement in the records required to be maintained by a Federal Firearms Licensee, or dealing firearms without a license, Defendant faces up to five years in prison, up to three years of supervised release, and up to a $250,000 fine for each charge. If convicted of being a habitual user of a controlled substance in possession of a firearm, Defendant faces up to 10 years in prison, up to three years of supervised release, and up to a $250,000 fine.

b) **The weight of the evidence against the Defendant.**

The evidence against Defendant is substantial. The Court takes judicial notice of the information contained in the Criminal Complaint and Affidavit. The Government set forth the following evidence and information by proffer and through the testimony of ATF Task Force

Officer Kevin Drummond and ATF Special Agent Mark Finnemore.

In July of 2019, ATF began investigating Defendant. ATF gun traces established that several firearms purchased by Defendant between July 2016 and April 2018 had been recovered in criminal investigations.[1] On April 6, 2017, Defendant purchased a firearm in West Palm Beach, Florida, for an individual who wanted to evade the mandatory waiting period.[2] Defendant completed an ATF 4473 form at that time. The individual paid Defendant approximately $60 to purchase the firearm. The firearm was later stolen from the individual's car by an associate of Defendant's, as part of a plan which the Defendant was part of, according to the Government. This firearm was later discovered in a vehicle next to a man who had been shot multiple times.

On September 23, 2020, law enforcement conducted a non-custodial, audio recorded interview of Defendant in a parking lot. Defendant gave multiple false statements regarding his purchase of the firearm in April 2017, but he eventually did state that he had been trying to help the individual out by buying the firearm for him. Defendant also admitted to having bought firearms for other individuals, but he represented that he first made sure they were not felons. In exchange, he received "tips" in the amount of $20-50 per firearm. Defendant acknowledged that he smokes marijuana once or twice each month. He stated that he had purchased approximately 30 firearms since he obtained his concealed weapons license, but he had only three firearms in his possession. He explained that he had purchased a firearm within the last week in West Palm Beach for an individual who wanted to evade the waiting period, and he was paid approximately $100 to buy the firearm.

---

[1] One firearm was found in the possession of a known gang member, one was found during the execution of a search warrant in a homicide investigation, and one was found in a vehicle next to one of Defendant's associates, who had been shot several times and later died in a different shooting.
[2] Defendant is not subject to that waiting period because he has a concealed weapons permit issued by the State of Florida.

Law enforcement went to the firearms retailer where Defendant admitted that he had recently purchased a firearm. Law enforcement determined that Defendant had purchased eight firearms at that one particular location since December 2019. For each purchase, he completed an ATF form 4473. He made several misrepresentations in the various forms.

It appears, based on the evidence, that Defendant purchased a firearm in July 2020 in West Palm Beach. He then purchased a firearm in West Palm Beach on September 4, 2020, returned to Portland, Oregon, then returned to West Palm Beach to purchase additional firearms on September 21, 2020.

On September 30, 2020, law enforcement interviewed Defendant's grandmother. She agreed to permit a law enforcement officer to accompany her into the room that Defendant allegedly stays in when he visits her. Law enforcement found a loaded pistol on the bed, as well as a small quantity of marijuana in the bedroom. Defendant's grandmother stated that Defendant smokes marijuana several times per week.

In effect, the Government established that Defendant had made numerous false statements relating to his purchases of firearms, that several of the illegally purchased firearms were subsequently involved in criminal activity, and that Defendant lied to the agents about his firearm purchases.

c)      **The history and characteristics of the Defendant.**

The Court takes judicial notice of the Pretrial Services Reports dated September 30, 2020, and October 2, 2020. Additionally, the Court admitted Government's Exhibits 1-4 at the detention hearing over the objection of defense counsel.

Defendant was born on March 6, 1994, in New Jersey. Defendant reported to Pretrial Services that he has resided with his grandparents in Lake Worth, Florida, for the last two months.

However, the evidence, including Government's Exhibits 1 and 3, the testimony presented, and the representations of Defendant's family members, establishes that Defendant has actually been living in Portland, Oregon, for approximately eight months and only visiting Palm Beach County for short periods of time. It is clear that Defendant falsely stated to Probation Officer Nathan Vreeland that he had been living with his grandmother in Lake Worth for the past two months, when he had actually been living in Portland, Oregon.

Defendant's mother, father, and three siblings reside in West Palm Beach, Florida. His grandparents reside in Lake Worth, Florida. Defendant told Pretrial Services that he is single and has never fathered any children; however, it appears that Defendant does have a girlfriend who resides in Portland, Oregon. He does not possess a U.S. passport and has not traveled outside of the United States in the last ten years.

Defendant earned his GED and took some college level classes in 2014 and 2015. Defendant is currently unemployed, but he most recently worked at a marijuana farm in Portland, Oregon, for approximately six months. He has no assets or liabilities except that he owns a 2012 Buick LaCrosse for which he pays $475 monthly. Defendant has back problems and takes prescribed Oxycodone as needed. He may have been diagnosed with attention deficit hyperactivity disorder and/or bipolar disorder in the past, but he is not currently receiving treatment for either. Defendant told Pretrial Services that he smokes marijuana approximately once a month, but his grandmother has represented that he smokes marijuana more frequently than that.

On September 17, 2020, Defendant posted the following comment on his Facebook page above a video depicting three law enforcement officers: "[y]eah I'm shooting all 3 cops…." *See* Govt. Ex. 2. Additionally, in a jailhouse call Defendant made on September 30, 2020, Defendant appeared to state to his father, "Nothing else, trying to get the fuck outta here…. and then jump.

[Voices overlap]." *See* Govt. Ex. 4, p. 7.

**d)     The criminal history of the Defendant.**

Defendant's only prior criminal arrests were for driving without a valid driver's license, possession of paraphernalia, and possession of under 20 grams of marijuana. He entered pretrial diversion for all of these crimes, but he eventually pled guilty to the marijuana possession and paraphernalia charges.

**e)     The likelihood of the Defendant's appearance in court if released.**

The Court finds that there is a serious risk that Defendant will flee or fail to appear in court if released.  In light of the substantial weight of the evidence against him; the substantial prison term Defendant faces if convicted; the fact that Defendant was untruthful to a Pretrial Services officer about where he had been living; the fact that Defendant has, by his own admission, purchased at least 30 firearms, which are mostly unaccounted for; Defendant's illegal and legal drug use; his lack of gainful employment; his lack of a stable residential history; Defendant's apparent statement during a jailhouse call that he intends to "jump" if released; the fact that he lied to ATF officers regarding his firearm purchases while the matter was under investigation; the fact that the living arrangement proposed by defense counsel if Defendant were to be released is not suitable; and the fact that Pretrial Services recommended detention, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a serious flight risk, and that no conditions or combination of conditions of release will assure his appearance in court.

It is clear to the Court that Defendant was evasive about where he has been living over the past two months. Defendant seemingly has had a transient lifestyle. It is also unclear where, or with whom, he was living in Portland, Oregon. He has had an unstable living arrangement and an unstable and unverified employment history, and he appears to have been travelling back and forth

6

between Portland and Palm Beach County while he purchased many firearms. When combined with his comment that he would "jump" if released, the Court simply does not trust Defendant to appear in Court when required. There is simply no condition or combination of conditions of release that will reasonably assure Defendant's appearance in Court. Defendant presents a serious risk of flight or nonappearance if released.

      f)      **The nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release.**

The Court also finds that there is no condition or combination of conditions of release which will reasonably assure the safety of the community if Defendant is released. In light of the Government's substantial evidence against Defendant; the seriousness of the charges against Defendant; the lengthy prison sentence Defendant is facing; the fact that Defendant has, by his own admission, purchased at least 30 firearms, most of which are unaccounted for; the fact that Defendant has put firearms in the hand of criminals and/or firearms purchased by Defendant have been found during various criminal investigations, including homicide investigations and at the scene of a shooting; Defendant's legal (oxycodone) and illegal (marijuana) drug use; Defendant's access to multiple firearms; Defendant's evasiveness to agents as to whom he gave the firearms; the fact that Defendant has expressed a great deal of hatred toward law enforcement and disrespect for the criminal justice system; and the fact that Pretrial Services recommended detention, the Court finds that the Government has shown by clear and convincing evidence that Defendant is a danger to the community and that no conditions or combination of conditions of release will assure the safety of the community.

The Court finds that Defendant's expressed hatred of law enforcement officers; his access to numerous firearms; his use of illegal drugs while possessing firearms; his straw-man purchases of firearms subsequently recovered at the scene of a shooting, at the scene of a homicide-related

search warrant, and from a documented gang member; as well as the other factors evident in this case, establishes by clear and convincing evidence that Defendant is a danger to the community in general, and to law enforcement officers specifically. The Court notes that Government's Ex. 2 contains a screen-shot of a recent posting by Defendant on his Facebook page where he comments on a video involving law enforcement officers and specifically states: "yeah I'm shooting all 3 cops…" Defendant clearly has the ability to carry out a shooting of police officers due to his access to numerous firearms, and he admits that he would like to shoot police officers. Under such circumstances, the risk of danger presented by the Defendant to the community in general, and to law enforcement officers in particular, is simply too great to allow the release of the Defendant.[3]

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

---

[3] The Court does not make its decision to detain this Defendant lightly, especially in view of the ongoing COVID-19 pandemic and its effect upon jail populations, which pandemic is a relevant factor which has been carefully considered by this Court in this case, as it has in other cases before this Court. *See, e.g., United States v. Bailynson*, 18-cr-80124, 2020 WL 5367320, at *9-10 (S.D. Fla. Sept. 8, 2020). However, the serious risk of flight and dangerousness concerns of this Defendant militate against his release in this case.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the

Southern District of Florida, on the 9th day of October, 2020.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE